**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| Kathleen P. Tate, | : | CIVIL CASE NO. |
|     Plaintiff, | : | 3:23-cv-01177 (JCH) |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
|     COMMISSIONER OF SOCIAL | : | SEPTEMBER 24, 2024 |
|     SECURITY | : | |
|     Defendant. | : | |

**RULING ON PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE COMMISSIONER (DOC. NO. 16) AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER (DOC. NO. 19)**

**I.   INTRODUCTION**

The plaintiff, Kathleen P. Tate ("Ms. Tate") brings this action under section 405(g) of title 42 of the U.S. Code, appealing the final determination of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits and supplemental security income.  See Motion for Order Reversing the Decision of the Commissioner or Remand for Rehearing ("Pl.'s Mot.") (Doc. No. 16); Memorandum in Support of Plaintiff's Motion for Order Reversing the Decision of the Commissioner or Remand for Rehearing ("Pl.'s Mem.") (Doc. No. 16-1).  Ms. Tate moves this court to reverse the Decision of the Commissioner or, alternatively, remand the case for a hearing.  See Pl.'s Mot.  The Commissioner cross-moves for an order affirming the Decision at issue.  See Motion for Order Affirming the Decision of the Commissioner ("Def.'s Mot.") (Doc. No. 19); Memorandum in Support of Motion for Order Affirming the Commissioner's Decision ("Def.'s Mem.") (Doc. No. 19-1).

For the reasons that follow, Ms. Tate's Motion to Reverse or Remand (Doc. No. 16) is granted and the Commissioner's Motion to Affirm is denied (Doc. No. 19).

1

## II.     BACKGROUND

On June 4, 2019, Ms. Tate applied for all disability benefits for which she was eligible pursuant to Titles II and XVIII of the Social Security Act.  Administrative Record ("AR") 208.  She filed the application based on a disability that she claims began on November 21, 2016.  AR at 205, 208.  Ms. Tate's claims were denied on September 27, 2019, AR at 82–95, and again, upon reconsideration, on January 23, 2020.  AR at 96–110.  Ms. Tate filed a request for a hearing on July 9, 2021, which was held on November 10, 2021.  AR at 15.  The hearing was held via telephone before Administrative Law Judge ("ALJ") Deirdre R. Horton.  See AR at 15.  Following the hearing, the ALJ concluded Ms. Tate is not disabled as that term is defined in the Social Security Act.  AR at 26.  On February 8, 2022, Ms. Tate filed a Request for Review by the Appeals Council, which was denied on July 5, 2023.  See AR at 1.  Ms. Tate next filed an appeal with this court.  The court assumes the parties are familiar with the Administrative Record and adopts the undisputed, but supported, facts as stated in Ms. Tate's Statement of Facts and adopted by the Commissioner.  See Pl's. Mem. at 2–27; Def.'s Mem. at 2.

## III.     STANDARD

The ALJ follows a five-step evaluation to determine whether a claimant is disabled within the meaning of the Social Security Act.  At the first step, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If not, the Commissioner proceeds to the second step and considers whether the claimant has a "severe impairment" which limits her mental or physical ability to do basic work activities.  If the claimant has a "severe impairment", the

Commissioner proceeds to step three and asks whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the Regulations. See 20 C.F.R. § 416.920(a)(4). If the claimant has one of these enumerated impairments, the Commissioner will automatically consider that claimant disabled, without considering vocational factors such as age, education, and work experience. Id.

If the impairment is not "listed" in the Regulations, the Commissioner proceeds to step four and asks whether, despite the claimant's severe impairment, she has the Residual Functional Capacity ("RFC") to perform past work. At step five, the Commissioner determines whether there is other work the claimant could perform. Id. To be considered disabled, an individual's impairment must be "of such severity that [s]he is not only unable to do [her] previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Commissioner bears the burden of proof on the fifth step, while the claimant has the burden on the first four steps. See McIntyre v. Colvin 758 F.3d 146, 150 (2d Cir. 2014).

Under section 405(g) of title 42 of the U.S. Code, the district court may not review de novo an ALJ's Decision as to whether the claimant was disabled. See Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998). The court's review of the Commissioner's Decision "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (citation omitted); see also 42 U.S.C. § 405(g). "Substantial evidence" requires "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  If the Commissioner's findings of fact are supported by substantial evidence, those findings are conclusive, and the court will not substitute its judgment in this regard for that of the Commissioner.  42 U.S.C. § 405(g); see also Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).

IV.     DISCUSSION

Ms. Tate argues that the ALJ erred in two primary respects.  First, she contends the ALJ misstated the Administrative Record, and relied on these mischaracterizations in making credibility findings as to Ms. Tate's alleged abdominal pain and frequent bowel movements.  See Pl.'s Mem. at 29–33.  Second, Ms. Tate argues the ALJ erred in making its RFC determination because it failed to account for medical evidence suggesting Ms. Tate cannot satisfy the demands of light work due to her exertional limitations and extensive need for "off-task" time.  See Id. at 33–36.  The Commissioner resists both sets of arguments.  See Def.'s Mem.  The court considers both arguments in turn.

   A.     Credibility Determination

According to Ms. Tate, the ALJ minimized her well-documented complaints of abdominal pain and frequent bowel movements and ignored important information in the record regarding the same.  See Pl.'s Mem. at 29–33.  As a result, Ms. Tate argues that her case should be remanded so that the ALJ can reconsider the record.  See id. at 33.

"After careful consideration of the evidence," the ALJ concluded that Ms. Tate's "impairments could reasonably be expected to cause the alleged symptoms[.]"  AR at 20.  Nonetheless, the ALJ found the "claimant's statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  AR at 20.

Despite the ALJ's "careful consideration," the court is left with the impression that the ALJ failed to consider the entirety of the record and drew incongruous conclusions as to Ms. Tate's ailments.  For example, the ALJ observed that, while Ms. Tate had complained of being unable to eat due to her abdominal pain and frequent bowel movements, "the record indicates that there was no significant weight loss, and the claimant was consistently advised to lose more weight."  AR at 23.  While it is correct that Ms. Tate was advised to lose weight during various examinations, see, e.g., AR at 430, 453, the ALJ did not mention that Ms. Tate reported losing 30 pounds because of "a reduced appetite."  Compare AR at 23, with AR at 412.

In another instance, the ALJ remarked, "there is no evidence . . . in the record" that Ms. Tate had bowel movements between ten to twelve times per day, aside from March 1, 2017,[1] where Ms. Tate's doctor drafted a note upon her request stating as much.[2]  AR at 21. The ALJ's summation of the record contradicts this conclusion because the ALJ noted that in March 2016, April 2016, and October 2018, Ms. Tate reported frequent bowel movements.  AR at 21.  Indeed, a March 7, 2016 entry reports it is "[h]ard for [Ms. Tate] to leave the house due to the unpredictable/un[ ]controllable

---

[1] The ALJ incorrectly observed that Dr. Michael Connolly, the author of the note, drafted it "[i]n March 2018[.]"  AR at 21; see AR at 464.

[2] The ALJ concluded the letter, drafted by Dr. Michael Connolly, was not probative because Ms. Tate was dismissed from Dr. Connolly's practice several months after the letter was drafted.  See AR at 21.  Ms. Tate appears to have been dismissed from the practice ten months after requesting the letter on the suspicion that she had been untruthful about her communications with her insurance provider.  See AR at 447 ("This is very different than the story you have been telling me about how you were talking to [your insurance provider] and they were working on getting you into another pain management clinic. Due to this untruthfull[sic]ness, I have no choice but to dismiss you from the practice.").

nature of her stools." AR at 483–84.  An April 29, 2016 entry reads, in part, "[h]aving diarrhea 10-12 times a day[,] still."  AR. at 479 (emphasis added).  And an October 9, 2018 entry characterizes Ms. Tate's bowel movements as "explosive bowel frequency and urgency up to 12x daily."  AR at 412.  Accordingly, the ALJ inconsistently concluded that there was "no evidence" of Ms. Tate's frequent bowel movements, when, as the ALJ notes, such evidence appears throughout the record.

      The ALJ later reasoned that treatment notes from New Solutions Pain Management contained "no mention of [Ms. Tate's] pervasive diarrhea[.]"  AR at 22.  While the New Solutions records may not describe Ms. Tate's diarrhea as "pervasive," the records do note that Ms. Tate "has diarrhea."  See AR at 582, 585, 588, 591.  Records from other treating institutions, dated around the time Ms. Tate was being treated by New Solutions, also mention her bowel symptoms.  See AR at 345, 366.[3]  Similarly, the ALJ observed that Ms. Tate's medical records from Live Well Pain Management do not mention complaints of diarrhea.  AR at 22.  While the word "diarrhea" does not appear in the Live Well records, multiple records from Live Well mention Ms. Tate's history of "[d]umping syndrome."  See e.g., AR at 795, 798, 801, 804.  This syndrome, as the parties agree, is a "condition that results in difficulty managing waste elimination."  Pl.'s Mem. at 16; see Def.'s Mem. at 2.[4]  Upon reviewing

---

[3] Ms. Tate's struggle with diarrhea is discussed elsewhere in her medical records.  AR at 437, 449, 466, 474, 489.  The record also includes regular mention of Ms. Tate's "dumping syndrome."  See AR at 471, 594, 597, 600, 603, 606, 609, 612, 615, 617, 620, 784, 787.

[4] According to the Mayo Clinic, "[m]ost people with dumping syndrome develop signs and symptoms, such as abdominal cramps and diarrhea[.]"  Dumping syndrome, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/dumping-syndrome/symptoms-causes/syc-20371915 (last visited Sept. 23, 2024).

the administrative record, therefore, the court is left with the impression that certain of the ALJ's conclusions rely on factual errors.

In the Second Circuit, when an ALJ's evaluation of medical evidence includes factual errors, findings that rely on these errors cannot be said to be supported by substantial evidence. See Pratts v. Chater, 94 F.3d 34, 38 (2d Cir. 1996) (explaining that the ALJ erred in assessing the evidence, including by ignoring evidence of weight loss, and, in erring, finding that the ALJ's "decision to deny [the claimant's] disability benefits is not supported by substantial evidence."). Here, the ALJ erred in at least two respects. First, the ALJ concluded that the record did not reflect that Ms. Tate experienced "significant weight loss," AR at 23, yet, instead, it reflects that Ms. Tate lost 30 pounds because of her abdominal pain. See, supra, Section IV.A. Second, the ALJ erred by concluding that there was "no evidence" to support this level of frequency of Ms. Tate's bowel movements, AR at 21, and that the record did not consistently reflect Ms. Tate's bowel symptoms, more generally.[5] AR at 20–22. The record, however, contains almost two dozen references to Ms. Tate's bowel-related symptoms, history, or condition, several of which detail the unusual frequency of her stools. See, supra, at 5–6, 6 n.3. Accordingly, the court concludes that the ALJ's findings as to Ms. Tate's abdominal condition and accompanying bowel movements lacked substantial evidence.

---

[5] The ALJ noted, in response to an entry claiming that Ms. Tate had visited several gastroenterologists to treat her abdominal symptoms, that "there is no evidence of [these visits] contained in the record, which was held open for further submissions." AR at 22. In considering the ALJ's rationale for discounting Ms. Tate's symptoms, the court is concerned that the ALJ has failed to adequately develop the record. It bears remembering that, in the Second Circuit, the ALJ has an affirmative duty to develop the record—even if the claimant is represented by counsel. Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) ("where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel[.]'") (quoting Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996)).

7

B.  RFC Description

The Residual Functional Capacity reflects "the most [one] can still do despite [one's] limitations." 20 C.F.R. § 404.1545(a)(1). It is determined by considering "all the relevant evidence in [one's] case record." Id. Ms. Tate argues that the ALJ erred in arriving at the RFC description at issue because the ALJ understated Ms. Tate's exertional limitations and ignored her need for considerable "off-task" time because of her frequent bowel movements. See Pl.'s Mem. at 33–36.

1.  Exertional Limitations

The ALJ concluded that Ms. Tate could perform light work, Ms. Tate asserts that she is unable to satisfy the exertional demands of light work because of her severe abdominal and back pain. Pl.'s Mem. at 33–34. To support this assertion, Ms. Tate points to various portions of the record cataloguing her history of debilitating pain. Id.

Upon review, it bears remembering that "whether there is substantial evidence supporting the appellant's view is not the question here; rather, [the court] must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (emphasis modified). In concluding that Ms. Tate's pain did not preclude her from performing light work, the ALJ noted that several of Ms. Tate's physical examinations revealed "essentially normal" results. AR at 20–22 (citing Ex. B1F and Ex. B5F). The ALJ further observed that, while Ms. Tate described her untreated pain as being "9/10," treatment notes from Live Well reflect her treated pain as being "3/10." AR at 22 (citing Ex. B10F and Ex. B11F). The ALJ further noted that Ms. Tate "reported good pain control, [and] improved functional status[.]" AR at 22 (citing Ex. B10F and Ex. B11F). The court's review of the record suggests the

ALJ's findings as to Ms. Tate's pain, and the exertional limitations connected therewith, are supported by substantial evidence.  That Ms. Tate points to evidence of her own to support the opposite conclusion is not enough to overcome substantial evidence supporting the ALJ's findings.

### 2. "Off-Task" Time

Ms. Tate next argues that the RFC is flawed because the ALJ failed to account for her frequent bowel movements.  See Pl.'s Mem. at 34–35.  Having already concluded that the ALJ's findings as to Ms. Tate's bowel symptoms lacked substantial evidence, see, supra, Section IV.A, the ALJ's determination about Ms. Tate's RFC must be reevaluated.  Accordingly, the court finds it appropriate to remand this case so that the ALJ may reconsider Ms. Tate's limitations insofar as they relate to her bowel movements.

## V.    CONCLUSION

For the reasons stated above, the court grants the plaintiff's Motion and denies the defendant's Motion.  The case is remanded to the ALJ for proceedings consistent with this Ruling.

**SO ORDERED.**

Dated at New Haven, Connecticut this 24th day of September 2024.

                                                  /s/ Janet C. Hall
                                                 Janet C. Hall
                                                 United States District Judge